**Maria Mercedes CHAVEZ–MARTINEZ, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 22782.

United States Court of Appeals Ninth Circuit.

Feb. 11, 1969.

Rehearing Denied April 1, 1969.

Warren P. Reese (argued), San Diego, Cal., for appellant.

Shelby R. Gott (argued) Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and CRARY, District Judge *

CRARY, District Judge:

Appellant was convicted on two counts, one of violating Title 21, United States Code, Section 173, knowing importation of 130 ounces of heroin and 20 ounces of cocaine into the United States from Mexico, and Count 2, knowing concealment and facilitation of the transportation and concealment of the same narcotics. She now appeals that conviction in forma pauperis (28 U.S.C. § 1291). On March 5, 1968, appellant was sentenced to twenty years on each count, the sentences to run concurrently.

Appellant entered the United States from Mexicali, Mexico, on November 10, 1967, at the Port of Calexico. She was alone and driving a beige 1959 Plymouth two-door sedan, license No. QXR–027. There were two similar license numbers on the then current "look out" list at the Port of Entry, to wit, OYR–027 and OXR–027, but the cars with these numbers were not the same make as that driven by appellant.

Inspector Patty was on a primary inspection line on November 10th and no-

---

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

ticed the similarity of the number on the car driven by appellant to those on the look out list. He asked appellant her nationality, citizenship and whether she was bringing anything from Mexico. To the last question, she replied, "Nothing." He asked her to open the trunk of her car and, when she did not seem to know which key to use, Inspector Patty asked her if she owned the car, to which she replied "No, it belongs to a friend of mine in San Diego." This conversation was entirely in English. With respect to appellant's ability to speak and understand English, it is noted that she testified at the trial that she was born in Sacramento, California, and had lived there all of her life until she moved to Tijuana in August, 1967.

Mr. Patty referred appellant to secondary inspection where Inspector Knights again asked her what she was bringing from Mexico. He testified, "She again replied in the negative." He then asked her into the Customs Office and requested Chief Inspector Smith to watch her while he searched the car. Mr. Knights found nothing in his search of the car and returned to the Customs Office to check the "look out" and noticed the reference to "heroin in gas tank" with respect to one of the similar license numbers listed. On checking the car again, he noticed what appeared to be a fresh undercoat on the gas tank and its immediate area to which was clinging some waste material and sawdust. He tapped the tank and thought " * * * it didn't sound quite right * * * " so he called Customs Agent Richenberger, whose office was in Calexico, to come down and look into the matter.

While waiting for Agent Richenberger to arrive, Mr. Knights, having seen a temporary registration on the windshield of appellant's car, asked her who owned the car and she said a friend, Lourdes Rodriguez, who lived in the Los Angeles area. He then asked where she had met this person and appellant said she had met her only yesterday on the street in Tijuana and that she had borrowed the car "yesterday." In reply to

further questioning she stated she had come to Mexicali to visit a friend, Olga, whose last name she could not remember but did know where Olga lived, and she was crossing the border to visit her mother in Los Angeles.

Appellant's temporary operator's license stated her address to be 120 Willow Street, San Ysidro, California.

After this conversation between Mr. Knights and appellant, the gas tank was removed and in a compartment welded therein was found 130 ounces of heroin and 20 ounces of cocaine. She was thereupon advised of her constitutional rights, first in English by Customs Agent Quick and they were then read to her from a card in Spanish by Agent Martin. Both admonitions were the same except she was told in Spanish, as to her right to an attorney, that she had a right to have an attorney assigned to represent her by the Commissioner or the Court, and also, as literally translated by Agent Quick, had the right " * * * to have one obtained, to have one appointed for you if you have no other means of obtaining one." Agent Quick had stated to her in English, on this point, that if she could not afford an attorney one would be provided for her. After the admonition in English and Spanish, appellant said she understood what she had been told, that she would not sign anything but " * * * I will tell you what you want.", and that she would waive her right to have an attorney present.

The statements of appellant to Agent Martin following the admonition as to her constitutional rights were, in substance, that she had visited a friend in Mexico, that she had only seen the vehicle she was driving the day before her arrest, that she denied writing "Lourdes Rodriguez" on the temporary registration form, and that she borrowed the car from Lourdes Rodriguez.

She stated to Agent Quick that she owned a 1966 Chevrolet automobile and because her car was broken down she had borrowed the car she was driving across the border. She later denied that she owned an automobile.

Albert Toledo testified he sold the vehicle in question to appellant for $395.00 and that she signed the Bill of Sale as "Lourdes Rodriguez".

Roger Boillin testified that at the time of the said sale appellant stated she was living with her aunt or mother in Los Angeles but " * * * didn't know the number * * * ", so he used the dealer's address, 9000 Telegraph Road, Downey, California, on the temporary registration.

## SPECIFICATIONS OF ERROR

Appellant specifies the following errors on appeal:

1. Refusal of the trial court to propound defendant's voir dire questions to the jurors.

2. Denying appellant's motion to suppress statements made by appellant prior to discovery of the contraband and prior to being advised of her constitutional rights.

3. Denying appellant's motion to suppress statements made by appellant after the contraband was discovered, without having understandingly waived her constitutional rights.

4. Receiving into evidence the above described statements.

5. Error in receiving in evidence testimony of Highway Patrol Officer Ellis relative to traffic citation to the appellant on August 18, 1967.

6. Error in receiving into evidence, as Exhibit 10, the said traffic citation, and Exhibit 16, evidencing sale of the car driven by appellant at the time the said citation was issued.

The alleged errors will be considered seriatim.

## VOIR DIRE EXAMINATION

█ The appellant complains of failure of the trial judge to ask potential jurors on voir dire, in substance, (a) whether any juror might be influenced by a judge's criticism of a jury's ver-

dict in another case, (b) whether the large amount of narcotics involved would mitigate against a finding of innocence on the part of the defendant, (c) whether their attitude would be the same if the amount of narcotics was only one or two ounces, and (d) whether any juror could not accept at the outset that the defendant did not know the narcotics were concealed in the car she was driving.

Only one juror had been present when a judge in another case had criticized the jury. The possibility of prejudice and the issue of fairness were covered in the several questions by the court to the jury to assure a fair trial to the appellant and to avoid any possible prejudice on the part of any member of the panel. In the circumstances, the Court concludes that the appellant was not prejudiced by any claimed insufficiencies in the court's voir dire of the jury.

## RIGHT TO SUPPRESSION OF STATEMENTS OF APPELLANT PRIOR TO DISCOVERY OF THE CONTRABAND

It is urged by appellant that when Mr. Knights asked Inspector Smith to watch her she was then deprived of her liberty in a significant way and was therefore in "custody" as conceived by the Supreme Court in Miranda v. United States, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965).

There, the Court said:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]

4. This is what we meant in Escobedo when we spoke of an investigation which had focused on an accused."

The detention of appellant, before the contraband was discovered, does not fall within the foregoing definition. It was not "significant," nor had the investi-

gation "focused" in the sense in which those words were used by the Court.

Appellant was detained pursuant to title 19, United States Code, § 1582, which provides in part:

" * * * all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government * * *."

The statute applies to "all persons" who enter this country. We know that many thousands enter every day, and that each is detained until a search has been made or his answers to questions have convinced the customs agent that no search is necessary. To say that by reason of such "detention" each is in custody, or that an investigation has focused upon him, would distort the *Miranda* rule beyond recognition. Yet we know that each such person is routinely asked questions; his citizenship, from whence he comes, where he is going, whether he is bringing any merchandise or goods with him and if so what, et cetera. Depending upon his answers and the surrounding circumstances, further questions may be asked, as was done here. Here, none of the questions was directed to the offense which was later uncovered and for which appellant was thereafter arrested. We think that all such questions fall within the principle also announced by the Court in *Miranda* as follows:

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."

■ We hold that the warning required in *Miranda* need not be given to one who is entering the United States unless and until the questioning agents have probable cause to believe that the person questioned has committed an offense, or the person questioned has been arrested, whether with or without probable cause. It is at that point, in border cases, that the investigation has "focused" in the *Miranda* sense.

We know of no cases that are in conflict with the rule that we announce. Our decision in Williams v. United States, 9 Cir., 1967, 381 F.2d 20, supports it. Where we have reversed because a *Miranda* warning was not given, the contraband had been found before the questioning. Groshart v. United States, 9 Cir., 1968, 392 F.2d 172. This was also true where we have affirmed because the warning met *Miranda* standards, Craft v. United States, 9 Cir., 1968, 403 F.2d 360 (decided October 31, 1968), or because the statement was volunteered, Deck v. United States, 9 Cir., 1968, 395 F.2d 89.

■ Here, appellant had not been arrested when agent Knights questioned her before the contraband was found. Williams v. United States, supra, and see People v. Mitchell, 1962, 209 Cal.App.2d 312, 318, 26 Cal.Rptr. 89, 92. And what the agents knew was sufficient to arouse some suspicion, but it did not yet amount to probable cause to arrest appellant.

RIGHT TO SUPPRESSION OF STATEMENTS BY APPELLANT AFTER THE CONTRABAND WAS DISCOVERED

■ The explanation to appellant of her constitutional rights was adequate. The slight difference in the Spanish and English admonitions, as to her right to have an attorney appointed if she could not afford to employ one, does not appear to have resulted in prejudice to the appellant. The evidence discloses that she spoke English at times and at times English with some Spanish. That she understood the admonition in English, which was complete in all respects, is confirmed by the testimony of Agent Martin who said, "Well, I heard her say

she understood the English version of her rights that Mr. Quick gave her, * * *." The trial court denied appellant's motion to suppress her statements to the Customs Inspectors and Agents, referred to and discussed above, and the admission in evidence of the said statements of appellant was not erroneous in the circumstances.

### THE ADMISSIBILITY OF THE TESTIMONY OF HIGHWAY PATROL OFFICER ELLIS AND GOVERNMENT'S EXHIBITS NUMBERED 10 AND 16

Officer Ellis testified that he gave appellant a traffic citation (Exhibit 10) on August 18, 1967, while she was driving a 1961 green Plymouth, License No. ICE–639, about ten miles north of Calexico. The Officer's conversation with her was in English. He testified that the car was registered to Lurds Guiterrez and that appellant gave her address as 1485 Fourth Street, San Diego, California.

The Government offered the testimony of Officer Ellis as evidence of the fact the appellant had not given him her true address, to show the similarity of the names of the registered owners of the cars she drove on August 18, and November 10, 1967, and as evidence which might be pertinent to whether appellant made false statements to Inspector Knights on November 10, 1967, as to her address, as to having met Lourdes Rodriguez on the street in Tijuana the day before, and as to the borrowing of the 1959 Plymouth on that day. The testimony was not offered to prove the commission of the crimes charged by the use of prior offenses or arrests.

Exhibit 16 was a Bill of Sale of the 1961 Plymouth which was admitted in evidence *without* objection. It shows the purchaser of that car was Lurds Guterriez, 2309 Wall Street. The appellant testified she had never lived at that address.

Not finding reversible error, we affirm.