UNITED STATES of America, Plaintiff-Appellee,

v.

Ernestine A. LUTHER, Defendant-Appellant.

No. 74–3178.

United States Court of Appeals, Ninth Circuit.

July 30, 1975.

Kirkpatrick W. Dilling, Chicago, Ill., for defendant-appellant.

Herbert Hoffman, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

OPINION

Before KOELSCH, CHOY and GOODWIN, Circuit Judges.

PER CURIAM:

Mrs. Luther ˙was convicted of smuggling merchandise in violation of 18 U.S.C. § 545, and she appeals. We affirm.

Mrs. Luther was stopped at the primary inspection area at the port of entry in San Ysidro. She failed to make any declaration in response to the routine question by the customs officer. An inspection of her car then revealed 3,600 Wobe-mugos laetrile capsules of German origin[1] in the trunk. Her car keys were taken from her and she was directed to wait in the secondary inspection area.

She was questioned there by Special Agent Nadel, who had been informed by telephone of the incident concerning Mrs. Luther. He knew that Mrs. Luther had failed to declare the medicine as required, and that the medicine was unau-

---

1. Wobe-mugos is a potent laetrile medicine coveted by some cancer victims. It is unlicensed in this country.

thorized for entry because of its foreign label. Upon viewing the Wobe-mugos capsules, however, he determined that they were of such little value that he would only make an administrative seizure. Holding the bag containing the capsules, he questioned Mrs. Luther over the public counter in the inspection area to verify her identification and her possession of the undeclared medicine. He then offered Mrs. Luther a receipt and told her she could leave. Mrs. Luther chose to remain while a call was made to see if Wobe-mugos were authorized by the Food and Drug Administration. Upon learning that the capsules would be held she obtained her car keys and left.

The next day Agent Nadel learned that the quantity of laetrile possessed by Mrs. Luther was worth $1,200. Surmising that a seizure of some importance had taken place, he obtained a warrant and arrested Mrs. Luther at her home. Only at that point were *Miranda* warnings given.

■ Appellant urges that when questioned at the secondary inspection office at the port of entry in San Ysidro, she was deprived of her freedom of action in a significant way and was in custody as conceived in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). She contends that statements obtained at that time were inadmissible because no *Miranda* warning was given her. We hold that the interrogation was not custodial in nature for the purposes of *Miranda* and, consequently, that the testimony of Agent Nadel was properly admitted.

■ By "custodial interrogation" the *Miranda* Court meant questioning initiated after a person was taken into custody or otherwise deprived of his freedom in any significant way. In this circuit an objective reasonable man test is employed in determining whether a person is in custody. The factors to be considered are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and pressure exerted to detain him. If the person reasonably believes that he cannot leave freely, he is considered in custody and a *Miranda* warning is required. *Lowe v. United States*, 407 F.2d 1391, 1397 (9th Cir. 1969).

■ Applying these rules to the present case, we find that the temporary detention was not significant. Mrs. Luther was summoned from among the other persons in the secondary inspection area when Agent Nadel held up her capsules and asked to whom they belonged. The physical surroundings were a public counter. Rather than the compelling atmosphere of apprehension and arrest, it is plain that at most an administrative seizure was taking place and that the agent was merely filling out a form to that end. Her car keys were held pending the identification check, but any deleterious effect of this is negated by the fact that she was not charged or arrested and was told that she could leave. We hold that where a person is not charged, arrested, or otherwise confronted with guilt, there is an atmosphere of mere administrative routine, and the person is told she is free to go, the circumstances do not amount to a deprivation of freedom in a significant way and are not equivalent to the compelling atmosphere to which *Miranda* was directed. We do not consider the agent's belated intent to arrest; we instead examine the actual circumstances at the time of the confrontation and gauge their effect on the person under the "reasonable man" test. *Lowe v. United States, supra.*

Appellant cites *Chavez-Martinez v. United States*, 407 F.2d 535 (9th Cir. 1969), *cert. denied* 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969), for the proposition that *Miranda* warnings should have been given to Mrs. Luther because probable cause existed. Implicit to the holding in *Chavez* is the element of custody. The suspect was confined under guard in the customs office, confronted with her concealment of heroin, and arrested on the spot. Contrary to this, Mrs. Luther was free to wander the cus-

toms area, was unconfronted with a charge of smuggling, and was told in good faith that she could leave.

■ Appellant also claims that the evidence was insufficient to support the verdict. Appellant failed to make a motion for judgment of acquittal at trial. Such a failure operates to waive the benefits of the motion unless the appellate court finds that a manifest miscarriage of justice would thereby result. *Beckett v. United States*, 379 F.2d 863 (9th Cir. 1967). Finding no such result here, we do not consider appellant's claim of insufficiency of the evidence.

■ We do not consider appellant's other arguments because they were raised for the first time in her reply brief. Only a miscarriage of justice would compel the consideration of such untimely contentions. Again, we find no such injustice resulting here.

Affirmed.