UNITED STATES of America,
Plaintiff-Appellee,

v.

Blanca ESTRADA–LUCAS,
Defendant-Appellant.

No. 78–2618.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1979.

Decided Jan. 30, 1980.

As Amended Nov. 6, 1980.

**1262**

Peter K. Nunez, Asst. U. S. Atty., San Diego, Cal. (argued), for plaintiff-appellee; William A. Bower, Asst. U. S. Atty., San Diego, Cal., on brief.

Kenneth R. McMullan, San Diego, Cal., for defendant-appellant.

Before SNEED and TANG, Circuit Judges, and PFAELZER,* District Judge.

### AMENDED OPINION

TANG, Circuit Judge.

Blanca Acevedo[1] was charged with violation of 18 U.S.C. § 545, importing merchandise without declaring it. Her first trial ended in a hung jury. Upon retrial to a second jury, she was convicted. On appeal, Acevedo argues that the trial court erred in excluding as evidence at the second trial the fact that she passed a certain polygraph test. The court had admitted the evidence at the first trial. We agree, and reverse. In the event of retrial, we also reach Acevedo's second claim of error, i. e., that her statements to customs agents should have been suppressed. On this point, we affirm in part and reverse in part.

*FACTS*

On October 14, 1977, Acevedo came into this country from Mexico and submitted to customs inspection at the Port of Entry, San Ysidro, California. Her luggage consisted of a shoulder bag and a duffel bag. She did not reply when customs agent Gomes, who inspected her, asked in English what she was bringing from Mexico. When he repeated the question in Spanish, she replied in Spanish. According to Inspector Gomes, she said, "Nada, mi ropa, nada mas," which means "Nothing, my clothes, nothing more." According to her, she said "Mi ropa, las mantillas [sic] y alhajas," which means, "My clothes, tablecloths and jewelry."

When Gomes searched Acevedo's duffel bag, he first found some tablecloths. He asked her how many tablecloths she had, and what she intended to do with them. She said there were ten, and that they were not for sale. Gomes continued searching the duffel bag, and found three transparent plastic bags containing a large quantity of gold jewelry, later stipulated to have a value of about $19,000. After finding the first bag, Gomes asked Acevedo what was in the bag, and she replied in English, "It's jewelry." As Gomes was in the process of taking out the other two bags of jewelry, Acevedo made an unsolicited statement that the jewelry belonged to someone else and she was merely delivering it for that person.

After placing all the jewelry on the inspection counter, Inspector Gomes went to find Customs Inspector Ronald Myslinski, and told him, "I think we've got a biggie here." Gomes told Myslinski he was sure that the jewelry he had found was undeclared.

Myslinski then questioned Acevedo further. At first, Acevedo continued to deny that the jewelry was hers, but she eventually admitted that it belonged to her.

Acevedo was arrested and charged with importing merchandise without declaring it, in violation of 18 U.S.C. § 545. Her defense was that she did orally declare it when first questioned by Agent Gomes. To bolster her credibility on this point, Acevedo took and passed a polygraph examination. Her mo-

---

* Honorable Mariana R. Pfaelzer, United States District Judge for the Central District of California, sitting by designation.

1. Acevedo was indicted under her maiden name, Blanca Estrada-Lucas. In the proceed-ings in the trial court, however, she moved to omit her maiden name from her indictment, and was referred to and addressed by her married name, Blanca Acevedo. We shall do the same.

tion to admit the polygraph results was denied on the ground that, though valid, the test questions asked were not specific enough. Acevedo then took a second polygraph examination, at which the questions asked were drafted to conform to the trial judge's requirements regarding specificity. Acevedo passed this second test as well, and her motion to admit these results was granted.

Acevedo also moved to suppress the statements she made to the customs agents. The motion was granted as to certain statements made after she was formally arrested, but was denied as to the statements to Gomes and Myslinski discussed above. These statements were admitted against her at trial.

## I.

### Refusal to Admit Result of First Polygraph

Acevedo argues it was error, in the second trial, to refuse her counsel permission to introduce the fact of her passing the first polygraph test, a fact that was made known to the jury at the first trial.

The existence of the first test was originally brought out at the initial trial when Acevedo's counsel, at the very end of the direct examination of Acevedo, asked her whether she had taken "that [lie detector] test" (in the singular), and she answered, "Twice, yes." Based on this answer, the Government then argued that the defendant had opened the door to questioning about the first test for impeachment purposes. At this stage, the trial court expressed a willingness to admit a broad range of evidence relevant to the evidentiary weight of the results of the second polygraph examination. As to the first polygraph, the judge reiterated that it would not have been allowed as substantive evidence on its own, but that, given the existence of the second, admissible polygraph, his ruling did not mean that it could not come in for other purposes. These "other purposes" included impeachment of the second test, and rebuttal of the impeachment.

Thus, in the first trial Acevedo was questioned about both tests and was allowed, for rehabilitation purposes, to testify that she had passed the first one. The polygrapher who administered the second test also was permitted to testify that Acevedo took and passed a first test, and that the test was not mechanically defective, though he was not allowed to state what questions were asked in the first test.

In the second trial, the existence of the first polygraph test was not mentioned during the direct or cross-examination of Acevedo. The subject was first raised by the Government, during the cross-examination of the polygrapher. As in the first trial, the Government attempted to impeach the results of the second examination on the ground that repeated testing may affect subsequent polygraph results. On redirect, the defense attempted as in the first trial to introduce the fact that Acevedo had passed the first exam in order to minimize the effects of the impeachment. The trial judge agreed that the Government had "opened the door" on the issue. Nevertheless, he sustained the Government's objection to the defense's line of questioning, relying on his pretrial ruling that the results of the first polygraph were too inconclusive to be admissible. No mention was therefore made of the fact that Acevedo had passed the first test as had been shown at the first trial.

Acevedo argues that it was an abuse of discretion in the second trial to vary the ruling from what it had been in the first, and that the evidence was in fact admissible. The Government argues that the change in ruling was justified by the difference in the proceedings in the second trial, and that the results of the first polygraph were properly excluded as irrelevant to the second trial.

### A. Law of the Case

■ A decision of law in a case, once made, becomes the "law of the case," and should not be changed absent clear error in the original ruling or a change in the rele-

vant circumstances. *See generally* 1B Moore's *Federal Practice* ¶ 0.404[4] (2d ed. 1974). Law of the case is not an "inexorable command," however. *Kimball v. Callahan,* 590 F.2d 768, 771–72 (9th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). A district court may change its own ruling if differences between the first and second trials of a case justify the change. *See, e. g., United States v. Bettenhausen,* 499 F.2d 1223, 1229–30 (10th Cir. 1974) (law of the case did not bar trial judge from changing ruling on jury instructions, where evidence at first trial rebutted presumption of sanity, but evidence at second trial was insufficient to do so); *cf. United States v. Jimenez-Lopez,* 437 F.2d 791 (9th Cir.), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2195, 29 L.Ed.2d 432 (1971) (pretrial order suppressing evidence was law of the case because it was not modified by trial judge).

### B. Changed Circumstances

The Government argues that the change in ruling was justified by the differences in the course of proceedings at the two trials. There were differences, but not sufficient to justify the trial judge's departure in the second trial from the law of the case.

■ At the first trial, the existence of the first polygraph was initially introduced (apparently inadvertently) by the defendant. The judge then allowed questions about all aspects of the first test, with the single exception of the contents of the questions asked, to be used to impeach the results of the second test and for rebuttal to impeachment. The Government, rather than the defense, "opened the door" in the second trial but in both cases the door was open.

Moreover, the two trials did not differ in the most relevant respect. The purpose for which the defense sought to introduce the evidence was not different in the two trials. In both trials, the Government used the existence of the first polygraph to impeach the results of the second; in both trials, the defense sought to use the fact that Acevedo had passed the first as well as the second

test to bolster the second test and to forestall any jury inference of "polygrapher-shopping" or conditioning. Thus, we find no relevant change of circumstances which justified the judge's break with the law of the case in the second trial.

### C. Clear Error

■ As already noted, clear error in the original ruling can also justify a judge in deviating from the law of the case upon reconsideration of the original ruling. *See* 1B Moore's *Federal Practice* ¶ 0.404[4] (2d ed.1974). In this case, however, the trial judge's first ruling was well reasoned and not clear error. Even courts that do not admit polygraphs for the direct purpose of bolstering a witness's credibility admit them for other purposes. *See Tyler v. United States,* 193 F.2d 24 (D.C.Cir. 1951), *cert. denied,* 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952) (fact of taking polygraph, and negative results, were admissible to show voluntariness of subsequent confession); *cf. United States v. Hart,* 344 F.Supp. 522 (E.D.N.Y.1971) (negative results of polygraph given by Government to its own witness should be disclosed to defense as exculpatory evidence and may be introduced at trial for impeachment).

In the first trial the defense sought to introduce the fact that Acevedo passed the first test in order to rebut a portion of the Government's attack on the validity of the second test. For this purpose, the fact that Acevedo passed the first test was relevant, was not misleading, and was therefore admissible. Acevedo's credibility was crucial and this ruling should not have been altered at the second trial to exclude relevant defense evidence on her credibility.

■ A trial court's refusal to admit polygraph evidence, even for a limited purpose and under limited conditions, will rarely be overturned as an abuse of discretion. *United States v. Benveniste,* 564 F.2d 335, 339 (9th Cir. 1977). Nevertheless, as in the instant case, once the trial court had exercised its discretion to admit the evidence, it should not have deviated from the law of

the case at the second trial in the absence of clear error or changed circumstances.[2]

## II.

### *Miranda* Violation

Acevedo argues that the trial court should have granted her motion to suppress her statements to customs agents Gomes and Myslinski. She contends that the agents should have given her *Miranda* warnings as soon as the tablecloths and jewelry were discovered because the agents had probable cause to arrest her at that time. *See United States v. Moore*, 638 F.2d 1171 (9th Cir. 1980); *Chavez-Martinez v. United States*, 407 F.2d 535 (9th Cir.), *cert. denied*, 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969).

In *Chavez-Martinez*, this court held that *Miranda* warnings need not be given in a border crossing situation "unless and until the questioning agents have probable cause to believe that the person questioned has committed an offense." 407 F.2d at 539. We have explained, however, that implicit in the holding in *Chavez-Martinez* is the element of custody. *See United States v. Luther*, 521 F.2d 408, 410–11 (9th Cir. 1975). To trigger the *Miranda* requirements at a customs inspection, not only must probable cause exist but also a person must reasonably believe that he is not free to leave.[3] *Id.*

### A. Probable Cause

In this case, Gomes had probable cause to believe that Acevedo had committed the crime for which she has been convicted when he found the first bag of jewelry.[4] His subsequent statements to Myslinski reveal that Gomes was sure from the outset that Acevedo had not declared any jewelry.

The Government argues that Gomes did not have probable cause to arrest Acevedo at that point, because if she had originally purchased the jewelry in the United States and was merely bringing it back into the country, she would have been under no obligation to declare it, and her failure to do so would not have constituted a crime. Probable cause, however, is not a matter of certainty but of factual and practical probability. *See Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). The record reveals that Acevedo arrived from Mexico on the bus and crossed the border on foot, and that her luggage consisted of a shoulder bag and a duffel bag. Taking these circumstances into account, as Gomes was entitled to do, *see, e. g., United States v. Casimiro-Benitez*, 533 F.2d 1121, 1123–24 (9th Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 329, 50 L.Ed.2d 295 (1976), it was reasonable to believe that,

---

2. Our holding should not be interpreted as expressing disapproval of the trial court's initial decision to prohibit introduction of the results of the first test as substantive evidence.

3. Our decision in *Cervantes v. Walker*, 589 F.2d 424 (9th Cir. 1978), does not alter this analysis. The defendant in *Cervantes* was a prisoner who was questioned in a jail library and as a result admitted that a substance he was carrying was marijuana. We concluded that in a prison setting, where prisoners almost never are free to leave, the "free-to-leave" test was inapplicable. We stated that before *Miranda* warnings are required, some additional pressure must be exerted that would lead a reasonable person to believe "there had been a restriction of his freedom over and above that in his normal prisoner setting." In that case, we looked at the same four factors described in *Luther* to determine whether the test was met.

Unlike a prisoner, a person answering the initial questions of a customs agent at a border is not already in custody. Whether a person is free to leave the spot at which the person is being questioned retains significance during a customs inspection. *See United States v. Luther*, 521 F.2d at 410. Thus, the test used in *Cervantes* is not applicable to this case.

4. The Government argues to the contrary, relying in part on *United States v. Kurfess*, 426 F.2d 1017 (7th Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970). In *Kurfess*, however, the defendant's pre-*Miranda* warning statements were held admissible because they "were pursuant to a routine border search, *before his bags were open and the foreign watches found.*" *Id.* at 1020 (emphasis added). *Kurfess* is therefore distinguishable.

more probably than not, the approximately $6,000 worth [5] of gold jewelry he could see in the first bag was not part of Acevedo's personal wardrobe. The possibility that it might be did not negate probable cause any more than it in fact allayed Gomes's suspicions at the time.

## B. Custody

We next consider whether Acevedo was in custody at the time of her incriminating statements. In determining whether a person in a customs inspection is in custody, "[t]he factors to be weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the pressure exerted to detain him." *United States v. Luther*, 521 F.2d at 410.

In *Luther*, we found that the defendant was not in custody when she made prejudicial statements to a customs agent because (1) she was told that she was free to leave, (2) she was not confronted with evidence of guilt, and (3) the circumstances in which the questioning occurred suggested that at most merely an administrative seizure was taking place.[6] *See id.* at 410–11.

In this case, both customs agents testified that in their view Acevedo was not free to go during the relevant time. Unlike the defendant in *Luther*, Acevedo was not told that she could leave. Because the valuable jewelry was lying openly on the counter, it is unlikely that Acevedo erroneously felt free to leave. Another factor considered relevant in *Luther* supports our conclusion. The evidence of Acevedo's guilt was dis-

played prominently while the customs officials questioned her. Moreover, unlike the defendant in *Luther*, Acevedo was not led to believe that the items discovered in her luggage were to be handled as a minor administrative matter. In these circumstances, Acevedo was in custody for purposes of *Miranda*. Because probable cause existed and Acevedo was in custody, *Miranda* warnings should have been given. Statements made after Gomes found the first bag of jewelry are not admissible except for impeachment.[7] *See Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

Reversed and Remanded.

---

5. It is true, as the Government argues, that Gomes was not qualified to appraise the value of the jewelry. We refer to the value of the jewelry in the first bag, about one third of $19,000, only to give the best indication from the record of what the quantity was.

6. The agent at the secondary inspection area in *Luther* questioned the defendant at a public counter while the agent filled out a form used in administrative seizures.

7. Nor can it be argued that Acevedo's unsolicited statement that the jewelry belonged to someone else was admissible as a volunteered statement. We have determined that *Miranda*

warnings should have been given before Gomes asked any questions about the bag of jewelry. Acevedo made the statement in question directly after her statement in response to Gomes' question concerning the contents of the transparent bag of jewelry. We view Acevedo's statement concerning ownership of the jewelry to be part of her answer to Gomes' question concerning the bag of jewelry and a direct product of the question. *Cf. Phillips v. Attorney General of State of California*, 594 F.2d 1288, 1290 (9th Cir. 1979) (statement before warnings given admissible if volunteered and *not* made in response to question).