UNITED STATES of America, Appellee,

v.

Patricia Agatha LAYNE, Appellant.

No. 92–1026.

United States Court of Appeals, Eighth Circuit.

Submitted June 8, 1992.

Decided Sept. 3, 1992.

---

Michael C. O'Neel, Fargo, N.D., argued, for appellant.

Lynn C. Jordheim, Fargo, N.D., argued (Stephen D. Easton and Dennis D. Fisher, on the brief), for appellee.

Before BOWMAN and LOKEN, Circuit Judges and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

This case is on appeal from the United States District Court for the District of North Dakota.[1] Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291.

## I. STATEMENT OF THE CASE

Defendant Layne was charged by a criminal complaint dated September 4, 1991, with entering the United States at a place other than that designated by the United States Immigration Service. The Grand Jury indictment was returned on September 17, 1991, charging Defendant with the following:

Count I: Violation of 18 U.S.C. § 1001, making a false statement to an immigration and naturalization service officer about her arrest record.

Count II: Violation of 18 [8] U.S.C. § 1325(a)(1), knowingly and willfully entering the United States from Canada at a time and place other than that desig-

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Paul Benson, Judge of the United States District Court for the District of North Dakota, as to the suppression issue and the sanction issue. The Honorable Rodney S. Webb, Judge of the United States District Court for the District of North Dakota, as to the evidentiary issue.

nated by the immigration officers in the United States.

In a pretrial motion dated October 21, 1991, Defendant moved to suppress an oral sworn statement and a written sworn interrogation made to an immigration officer on August 30, 1991, at Pembina, North Dakota. The motion was heard on November 15, 1991, and denied. At the beginning of the hearing, Defendant asked for sanctions because the government filed its response to Defendant's motion to dismiss one day late. This request was also denied.

The trial was held on December 16 and 17, 1991, and on December 17, 1991, the jury returned a verdict of guilty as to both counts. On December 17, 1991, the court sentenced Defendant to a commitment to the Bureau of Prisons for a term of 15 days, with credit for the 15 days already served, and supervised release for one year. On December 23, 1991, the Defendant filed a Notice of Appeal.

## II. STATEMENT OF FACTS

On August 30, 1991, Patricia Layne, a Canadian citizen, applied for admission into the United States at the Pembina, North Dakota, port of entry. Upon arrival, her license plate was entered into the computer system used to check on vehicles and persons seeking to enter the United States. The computer check showed that Layne had a prior arrest for theft. Layne then voluntarily went inside the main building for further questioning. Immigration Inspector Todd Englestad asked her to fill out an immigration inspection declaration form. Question 7 on the form asked whether she had been arrested, convicted, or appeared in court for any reason. Layne's written answer was "speeding". When asked about Question 7, Layne stated that she had been arrested for speeding and evading arrest. Englestad added the

following to Layne's answer to Question 7: "Fargo—five yrs ago and evading police officer." Englestad discovered on his computer system that Layne had been charged with two theft crimes.

Layne was then taken into a room with two glass walls and one wall with a picture window, where she and Inspector Englestad were within view of officers and the public. She agreed to be placed under oath and was again asked about any arrests or thefts. Layne denied having arrests or thefts. Inspector Englestad then began asking questions, following a computer formatted inquiry, which began with a *Miranda* warning. Layne then voluntarily answered the questions and signed the computer printout at the end of each page.[2] She was then denied entry and told that she could appeal Inspector Englestad's decision. Layne left the Pembina border and drove to the Lancaster, Minnesota, port of entry where she was refused entry. She testified that after being denied entry at Lancaster, Minnesota, she was admitted by the Border Patrol into the United States at International Falls.

She then went to Grand Forks, North Dakota, where she was arrested by a U.S. Border Patrol Agent on September 2, 1991, for illegal entry into the U.S. The record showed that she arrived there on August 31, 1991. A search of border crossing records produced no evidence that Patricia Layne had legally entered the United States through an open port of entry on any date from August 30, 1991, to September 2, 1991.

Plaintiff testified that she did not lie to the immigration inspector about her criminal arrest record, rather she could not recall it. She knew that she had been "picked up" by East Grand Forks Police for theft in 1978,[3] but it was all a misunderstanding. Concerning the 1986 theft

---

**2.** She states that she did not feel free to leave the room, that she felt intimidated and that the first time she heard anything about her *Miranda* rights was when Inspector Englestad gave her a five page statement for her signature. She initialed the page containing a statement of the *Miranda* rights as she did the other pages in the statement.

**3.** Gary Cariveau, now Police Chief of East Grand Forks, Minnesota, testified that he was the detective in 1978 who arrested Layne for shoplifting on April 18, 1978, and that she was detained in custody for about 3 hours and was released upon posting a bond.

charge in Grand Forks, she said that she "pleaded guilty to everything." She also said that she intentionally omitted any references to other court appearances; did not recall being arrested; and did not believe it necessary to tell the immigration inspector about her lengthy list of court appearances.

## III. SUPPRESSION OF DEFENDANT'S STATEMENTS

Defendant challenges the denial of her motion to suppress concerning statements she made during a routine border stop at a United States port of entry in Canada.[4] She contends that she was in criminal custody upon her arrival at the port of entry and that she should have been given *Miranda* warnings before any questioning occurred. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The facts do not support Defendant's contentions. Defendant was briefly detained administratively by her own voluntary action, based upon her stated intention to enter the United States.

■ The standard of review of a district court's determination of a motion to suppress is the clearly erroneous standard. *United States v. Lewis,* 738 F.2d 916, 920 (8th Cir.1984). The decision of whether the Fourth Amendment was violated is subject to *de novo* review by this Court. *United States v. Stephenson*, 924 F.2d 753, 758 (8th Cir.1991). Under this standard, the district court's decision must be affirmed unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, the appellate court is left with the definite and firm conviction that a mistake has been made. *United States v. Eisenberg*, 807 F.2d 1446, 1450 (8th Cir.1986).

■ *Miranda* warnings are generally not applicable during general questioning, unless there is a compelling atmosphere of custodial interrogation. *Miranda*, 384 U.S. at 477–478, 86 S.Ct. at 1629 and *see also Chavez–Martinez v. United States*, 407 F.2d 535, 538–39 (9th Cir.1969) *cert. denied*, 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969) (routine customs process does not constitute custodial interrogation for Miranda purposes).

■ Routine questioning by customs officials is normally not custodial interrogation that triggers a *Miranda* warning. *See United States v. Troise*, 796 F.2d 310, 314 (9th Cir.1986) citing *United States v. Espericueta–Reyes*, 631 F.2d 616, 622 (9th Cir.1980). "To trigger the *Miranda* requirements of customs inspections, not only must probable cause exist but also a person must reasonably believe that he is not free to leave." *United States v. Estrada–Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980). Defendant does not dispute that *Miranda* warnings were given to her. She merely argues that she should have been given the warning before she was placed under oath and questioned in the private room, and because she was not given the warning, both her warned statement and her unwarned statements should be suppressed. First of all, a confession made after proper *Miranda* warnings and a valid waiver need not be suppressed solely because police obtained an earlier voluntary, but unwarned admission. *Hamilton v. Nix*, 781 F.2d 619, 624–25 n. 7 (8th Cir. 1985) *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

■ The immigration inspector's objective was to find out if Layne could legally enter the United States. She voluntarily came to the border and was asked routine administrative questions to determine her admissibility into the United States. When the computer generated information about Layne and the responses she provided, both oral and written, Inspector Englestad determined that Layne was withholding infor-

---

**4.** This Court notes that although appellant filed a pretrial motion to suppress, she made no objection to the admission of the oral and written statements at trial. As a general rule, the overruling of a pretrial motion to suppress the use, at the trial, of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at trial. *United States v. Criswell*, 696 F.2d 636, 637 Fn. 2 (8th Cir.1983). However, the better practice is for a defendant to object at trial when the evidence is offered. *Id.*

mation about her past criminal record. The initial questioning about her prior criminal record did not transform that routine administrative procedure into a custodial interrogation. A *Miranda* warning requirement is not applicable to every situation where law enforcement asks questions, rather it is the compulsive or coercive aspect of custodial situations that trigger *Miranda.* Defendant testified that she voluntarily went into the private office and gave a statement under oath. There was no evidence that there was a coercive atmosphere. Coercive official activity is a necessary predicate to a finding that a statement is not voluntary. *Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). After Defendant answered questions under oath, Englestad determined that her responses gave him probable cause to believe that she was committing a criminal violation by making intentional false statements to him. At this point, Layne was given *Miranda* warnings, prior to her giving and signing the sworn statement. Inspector Englestad testified at the suppression hearing that no *Miranda* warning was given before putting the Defendant under oath to answer questions, because the questioning was solely for the Immigration and Naturalization Service's administrative purposes.

Only after the Defendant answered questions under oath and failed to disclose her criminal arrest record, did Inspector Englestad foresee a possibility that prosecution could be initiated from her untruthful answers. Inspector Englestad then read the *Miranda* warning to her and took a sworn statement. Layne was free to leave the inspection station, and, in fact, immediately thereafter returned to Canada. Layne's rights were not infringed and this Court rejects her argument that her statements should be suppressed.

### IV. THE UNITED STATES' UNTIMELY RESPONSE TO DEFENDANT'S MOTION TO RESPOND

■ The United States filed its answer to Defendant's motion to suppress one day late. Defendant argues that the United States should have been denied a hearing on the motion to suppress and the statements should have been suppressed and sanctions issued. Local Rule 5 of the United States District Court for the District of North Dakota states that failure to file a brief within the prescribed time limits shall subject such motions to summary ruling, but does not mandate summary rulings. Defendant also argues that the district court judge's policy is that deadlines are firm and any violation of the deadline will be considered only if diligence can be shown. It is always within the discretion of the court to relax or modify procedural rules adopted for the orderly transaction of business before it when the ends of justice require it. *American Farm Lines v. Black Ball,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970). This action is not reviewable except upon a showing of substantial prejudice to the complaining party. *Id.* The district court judge denied the sanctions saying that he found no prejudice to the Defendant. Defendant has not shown substantial prejudice from the district court judge permitting the government to file its response one day late, and the district judge did not abuse his discretion.[5]

### V. ADMISSION OF GOVERNMENT'S EXHIBITS 4 AND 5

The United States offered Exhibits 4 and 5 as self-authenticating records of the Defendant's 1978 and 1986 theft convictions. The Defendant objected, on the ground that they were not being properly authenticated and that they were not self-authenticating, but made no claim that the documents were not authenticated.

■ When the issue on appeal is the admissibility of evidence, the standard of review to be used is whether the district court abused its discretion in admitting

---

**5.** Defendant also urges that sanctions should have been imposed. Sanctions are a matter for the district court's discretion. *Jensen v. Frank,* 912 F.2d 517, 524 (1st Cir.1990). The district court did not abuse its discretion.

such evidence. *Hicks v. Mickelson*, 835 F.2d 721, 726 (8th Cir.1987). The ruling on the admissibility of evidence will not be reversed on appeal "absent a clear and prejudicial abuse of discretion." *Wade v. Haynes*. 663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

■ Federal Rule of Evidence 901(a) states that authentication or identification is a condition precedent to admissibility satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. The district court stated that Exhibit 4 clearly was signed by a judge and it was a certified copy of the Polk County Court of the State of Minnesota. The court noted that Exhibit 5 contained a signature of a Clerk of the Court on Grand Forks County letterhead certifying that the documents were true and correct copies and that the originals were in the file in the Clerk of the Court's Office. The court concluded that it was convinced that Exhibits 4 and 5 were .sufficiently authenticated documents of court convictions and would be received over objections.[6]

From the Defendant's own testimony and the testimony of Gary Cariveau, East Grand Forks Police Chief, it was well established that the Defendant had been charged with theft on two prior occasions. It was the jury's duty to decide who was testifying truthfully about the Defendant's knowledge of her own criminal history. Government Exhibits 4 and 5 were not essential for the conviction and the district court did not abuse its discretion in admitting the exhibits.

Accordingly, the decision of the district court is hereby AFFIRMED.

---

**6.** The arresting officer and the defendant testified regarding the criminal record. Thus any flaws in the authentication process of Exhibits 4 and 5 were harmless error.