**AMERICAN SAMOA GOVERNMENT, Plaintiff**

v.

**TAUAILAUTI FALETOGO, Jr., Defendant.**

High Court of American Samoa
Trial Division

CR No. 11-00

June 21, 2000

Before KRUSE, Chief Justice, LOGOAI, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Bentley C. Adams III, Assistant Public Defender

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE

Defendant Tauailauti Faletogo, Jr. "Faletogo" has been charged with possession with the intent to distribute or deliver a controlled substance, marijuana, in.violation of A.S.C.A. §§ 13.1020, 13.1001 (b) and (e), and 13.1006. Faletogo seeks to suppress the physical evidence found inside

and outside his residence, and also seeks to suppress statements he made to the police. Hearing was held on this motion, with defendant and attorneys for both the government and the defendant present, on June 12, 2000.

## Facts

All evidence put forth on the motion was presented by one witness, Paulo Leuma, a police officer with the Department of Public Safety, whose testimony was uncontroverted at hearing. According to Officer Leuma, he received a call from a woman, defendant's wife, while he was on duty at the police sub-station west on February 16, 2000. The woman told Officer Leuma that defendant had assaulted her and that some household objects had been damaged.

Officer Leuma and two other officers, Hilda Leomiti and Justin Fa`afiti, proceeded to the Faletogo home, which is located behind KT Mart in Nu`uuli, arriving at KT Mart approximately five minutes after the call was received at the police station. They found defendant's wife sitting next to KT Mart. She appeared shaken, afraid, and seemed to have been crying. Officer Leuma spoke to defendant's wife, who restated what she had said on the telephone. She also told Officer Leuma that there was marijuana at the house, and that the parents were home.

Defendant's wife proceeded with the officers to the house. They saw no one at the front of the house. Officer Leuma instructed Officer Fa`afiti to go to the front door and knock, and instructed Officer Leomiti to go to the back door to see if any family members were there. Officer Leuma then saw defendant's parents across the street, and defendant's mother came across the street to the house to speak to Officer Leuma. The mother confirmed the wife's story about the disturbance, and confirmed that there were controlled substances in the house. The mother also consented to Officer Leuma going to the back of the house.

Officer Leuma and defendant's mother proceeded behind the house, and saw defendant inside watching television. Officer Leuma instructed defendant to come outside and sit on a concrete step next to the bathroom outside of the house. Defendant came out, and Officer Leuma then spoke to him. Defendant indicated that there had only been a family argument, and that he did not have drugs.

Officer Leuma suspected that defendant had a controlled substance, and after the mother again confirmed that defendant had marijuana, asked her for permission to search the house. The mother gave her consent, and Officer Leomiti proceeded, with defendant's wife, to search the part of the house containing the living room and parents' bedroom, per Officer Leuma's instructions. Defendant's wife found part of a marijuana joint

next to where defendant had been sitting, and gave it to Officer Leomiti, who showed it to Officer Leuma.

After inspecting the joint and determining that it was marijuana, Officer Leuma asked defendant why he had been lying. Defendant stated that he did not know about it, and then said nothing to the officer after that point.

Defendant's wife then gave permission to search her and defendant's bedroom. The officers did so, but found nothing. The wife stated that there were more drugs in the house or on the land, and described the drug containers as white plastic shopping bags and a black bag or pouch. Officer Leuma received permission from the mother to search the banana plantation in the back of the house. Defendant's wife also proceeded to the banana plantation, where she picked up a white shopping bag and took it to Officer Leuma. Defendant, meanwhile, was saying profanities to his wife. In the white shopping bag, Officer Leuma found more marijuana, along with rolling papers and plastic bags, which he surmised to be drug paraphernalia.

Officer Leuma then asked defendant to proceed with the officer to the police sub-station west.

## Analysis

### A. Legality of the Searches

 Defendant first argues that the searches of the house and plantation violated defendant's right to be protected from unreasonable searches and seizures. *See* Revised Const. of Am. Sam. art. I, § 5; U.S. Const., amend. IV. A person is entitled to Fourth Amendment protection in a place when he or she has a reasonable expectation of privacy in that area. *See Katz v. United States*, 389 U.S. 347, 351 (1967). As a result, searches generally require probable cause and a warrant to be reasonable, although there are some exceptions to these requirements. One widely accepted exception is that an officer may conduct a search after receiving consent to conduct the search from a person with authority to give permission. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A party with part ownership and full access to a home has such authority. *United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir. 1987).

In the present case, the house belongs to defendant's mother and father. Defendant's mother gave permission for both of the searches that resulted in the discovery of contraband. The inside search that resulted in discovery of half of a marijuana cigarette occurred in the living room, in a part of the house that leads to the parents' bedroom. Defendant's mother had the authority to consent to the search of this room and to the

search of the outdoor portion of the land. The searches conducted pursuant to her consent, therefore, were valid.

## B. Defendant's Statements to Police and His Silence

*1. Statements*

 According to defendant, his statements to police are inadmissible because he was not given *Miranda* warnings. A criminal defendant must be apprised of his or her rights, including the right to remain silent, whenever the accused is subject to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Only a statement made by a person in a custodial situation is subject to suppression on *Miranda* grounds. REVISED CONST. OF AM. SAMOA art. I, § 6; U.S. CONST. amend. V; *Am. Samoa Gov't v. Maiava*, 24 A.S.R.2d 20, 21 (Trial Div. 1993). An interrogation takes place when a police officer asks accusatory, rather than investigatory, questions, intended to elicit a confession rather than preliminary and general information. *Am. Samoa Gov't v. Taylor*, 19 A.S.R.2d 105, 106-07 (Trial Div. 1991). Officer Leuma admits that defendant was not given *Miranda* warnings until after he was taken to the police station. Prosecutorial comment about defendant's statements, therefore, will not be allowed if the officer was interrogating him and defendant was in custody when he made the statements.

 A person is in a custodial detention when he or she "is deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Such a detention may take place even when the suspect is not taken to a police station or placed under arrest. *Id.* To determine whether a custodial detention has taken place, courts have asked whether, considering the person's age, intellect, experience, and physical condition, the person should have believed that he or she was in custody. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Relevant factors include the physical surroundings of the interrogation, the extent to which the person is confronted with evidence, and the pressure exerted to detain, *United States v. Luther*, 521 F.2d 408, 410 (9th Cir. 1975), and courts also ask whether a reasonable defendant would have felt free to leave. *United States v. Salvo*, 133 F.3d 943, 948-49 (6th Cir. 1998). When the police question a person at the person's residence, the circumstances often fail to rise to the kind of custodial situation requiring *Miranda* warnings. *Id.* at 950.

 Officer Leuma told defendant to exit the house and sit on the concrete step by the bathroom while the investigatory search took place. He did not read defendant his *Miranda* rights, and did not tell defendant he was free to leave. According to Officer Leuma, defendant was not yet under arrest, and was free to leave at any time.

We believe that defendant was not in custody when Officer Leuma questioned him. Although defendant was instructed to come outside and sit, he remained at his home. The questioning was of very short duration, and occurred while the investigation was ongoing. Although some questioning took place after the police officers had already found a small amount of marijuana, this fact alone does not convert the scene into a custodial situation. We find that defendant had not yet become subjected to a custodial interrogation, and his statements to the police made at his home prior to his arrest are, therefore, admissible.

*2. Defendant's Silence*

 After defendant answered some of Officer Leuma's questions, he stopped answering him. The defendant wishes to prevent the prosecution from commenting on this silence. While the use of silence after arrest and *Miranda* warnings is not allowed, *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), pre-arrest silence does not implicate the Constitution in the same way. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). A prosecutor may therefore use pre-arrest silence to impeach a defendant's testimony. *Id.*; *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993). If defendant testifies, the prosecution may therefore use defendant's silence in rebuttal if it is probative of defendant's credibility and not prejudicial to defendant. *Jenkins*, 447 U.S. at 239.

Whether a prosecutor may use a defendant's pre-arrest silence in his or her case in chief is less clear. At least one state court has ruled without discussion that a pre-arrest silence when confronted by a police officer is inadmissible. *State v. Villarreal*, 617 P.2d 541, 542 (Ariz. Ct. App. 1980). Federal courts are split on the issue. *See United States v. Thompson*, 82 F.3d 849, 854-56 (9th Cir. 1996); *United States v. Calise*, 996 F.2d 1019, 1022 (9th Cir. 1993).

It is unclear whether the government wishes to use defendant's silence in its case in chief, and we would like the parties to brief the issue before making a decision. If the government so intends, counsel should file a memorandum with the Court not later than 20 days after this order is filed.

## Orders

1. Defendant's motion to suppress evidence obtained pursuant to the police search is denied.

2. Defendant's motion to suppress statements made by defendant is denied.

3. The Court reserves judgment on whether the government may

comment on defendant's silence on its case in chief. If the government wishes to use this evidence, counsel shall file a memorandum with the Court not later than 20 days from the date this order is filed.

It is so ordered.