**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Elmer Wayne CRISCO,**
**Defendant-Appellant.**

**No. 83–5016.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1983.

Decided Feb. 14, 1984.

Certiorari Denied May 14, 1984.
See 104 S.Ct. 2360.

Hector E. Salitrero, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Richard C. McCue, San Diego, Cal., for defendant-appellant.

Before SCHROEDER and CANBY, Circuit Judges, and PANNER,* District Judge.

PANNER, District Judge:

Elmer Wayne Crisco appeals jury convictions for conspiracy to possess cocaine with intent to distribute and use of a communication facility to facilitate the possession with intent to distribute. The issues presented on appeal are: (1) whether the district court should have suppressed defendant's statement which was made prior to advice of rights as the product of custodial interrogation; (2) whether the district court properly substituted an alternate juror for a regular juror after deliberations had begun; and (3) whether the district court abused its discretion in denying defendant's motion for mistrial. For the reasons set forth below, we affirm defendant's convictions.

## FACTS

On July 21, 1982, Claire Walker contacted defendant Elmer Wayne Crisco, who agreed to assist her in obtaining cocaine for undercover Drug Enforcement Administration Agent James H. Clem. Crisco introduced Walker to two prospective suppliers of cocaine.

The next day, Crisco and Walker met with Agent Clem and an informant at a park. From inside his vehicle Agent Clem showed Crisco $40,000 cash as the purported

---

* The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

$60,000 cocaine purchase money. Crisco said, "That's all I need to see." Crisco also reportedly stated, "I'll go make the phone call right now."

Crisco returned to his apartment with Walker and placed a telephone call to his suppliers, reporting that he had seen the money. His suppliers declined to become involved, however, and the deal was cancelled.

On July 28, 1982, Agent Clem and DEA Special Agent Robert Williams went to the government recruiting station where Crisco, an Army staff sergeant, was stationed. The agents informed the Army lieutenant on duty that they had a warrant for Crisco's arrest, and asked to speak to him. The lieutenant told the agents that Crisco was not there. The lieutenant left for a moment, and returned with a Marine Corps captain. The captain indicated to the agents that Crisco was in an adjacent room.

The agents, with the Marine captain, went into the room to advise Crisco that he was under arrest and explain the underlying charges. Crisco said that he did not understand the charges and protested that he had not done anything. Agent Clem then stated, "Hey, you met with me—for the purpose of seeing $60,000 that I was going to use to buy a kilo of cocaine." Crisco replied, "Well, I admit that." Agent Williams then advised Crisco of his constitutional rights. After this advice of rights, Crisco indicated that he wished to speak to an attorney.

The district judge denied Crisco's motion to suppress the statement he made prior to advice of rights. Crisco was convicted after a two-day jury trial. Claire Walker pled guilty to a misdemeanor in return for her testimony at Crisco's trial.

Following the jury trial, but before the jury retired to deliberate, the government and the defendant, through counsel and personally, signed a stipulation waiving Fed.R.Crim.P. 24(c), which requires that the alternate juror be discharged when the jury retired to deliberate. The stipulation provided that the court could substitute the alternate juror "in the event that good

cause be shown to excuse one or more of the original jury members from continuing deliberations," and if this occurred, the jurors would be instructed to begin their deliberations anew.

After the jury retired to deliberate, the presiding juror forwarded to the court a note stating that prior to trial, two jurors had engaged in casual conversation with the government's witness Claire Walker. The conversation related to Walker's hairstyle. After conducting an evidentiary hearing, the district court substituted the alternate juror for one of the jurors who had conversed with Walker. The district court denied Crisco's motion for a mistrial.

## SUPPRESSION OF CRISCO'S STATEMENT

The United States Supreme Court held in *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), that the prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Crisco's statement was made prior to advice of his constitutional rights. The statement must be suppressed, then, if it was the product of custodial interrogation.

 The determination whether a defendant was subjected to custodial interrogation is a factual determination that must be made on a case-by-case basis. *United States v. Booth,* 669 F.2d 1231, 1237–38 (9th Cir.1981); *United States v. Rubies,* 612 F.2d 397, 404 n. 8 (9th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). A district court's findings of fact are reviewable pursuant to the clearly erroneous standard. *United States v. Booth,* 669 F.2d at 1235. The district judge in this case found that Crisco had not been subjected to custodial interrogation, and therefore *Miranda* warnings were not required. This finding was not clearly erroneous.

The record indicates that upon arrival at the recruiting station the agents were told that Crisco was not there. The Marine

captain who subsequently corrected this impression insisted on accompanying the agents when they informed Crisco of the arrest warrant. Confronted with this information, Crisco immediately began protesting that he did not understand what was happening to him. Agent Williams testified that Crisco "never stopped talking from the time we first met him. He kept saying that we had the wrong person, that he hadn't done anything, and meantime, I was still talking to the Marine captain at the same time asking him if we could use another room that wasn't with all the people." The atmosphere was one of general commotion.

In response to Crisco's protests that he did not understand what was happening and that agents had the wrong person, Agent Clem explained, "Hey, you met with me—for the purpose of seeing $60,000 that I was going to use to buy a kilo of cocaine." It was in this context that Crisco made the statement, "Well, I admit that."

The district judge found this situation distinguishable from the custodial interrogation situations addressed in *Miranda.* He observed that the exchange between Crisco and the agent took place in the presence of the Marine captain, and reasoned, "seems like everybody had to justify their position." The judge concluded that the agents were not required to advise Crisco of his *Miranda* rights because the agents did not at that time have "complete" control of Crisco.

*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). Custody necessarily implies a degree of control. The district judge's comments suggest that because the agents were not yet in complete control of Crisco, the pressures of the coercive atmosphere identified in *Miranda* were not present in this case.

This circuit employs an objective reasonable person test in determining whether a person is in custody. *United States v. Curtis,* 568 F.2d 643, 646 (9th Cir.1978); *United States v. Luther,* 521 F.2d 408, 410 (9th Cir.1975). Factors to be considered are the language used to summon the defendant, the physical surroundings, the extent to which the defendant is confronted with evidence of his guilt, and the pressure exerted to detain him. *Curtis,* 568 F.2d at 646.

In *Miranda,* the Supreme Court stressed the coercive pressures inherent in interrogation of a suspect in isolated, unfamiliar, surroundings. 384 U.S. at 449–50, 86 S.Ct. at 1614–15. The trial judge was entitled to conclude that the circumstances of Crisco's encounter with the agents did not give rise to such pressures; that the conversation took place in surroundings familiar to defendant and in an atmosphere of confusion as to who was in charge. There was no evidence of coercion or intimidation, physical or psychological. On the contrary, the record indicates that Crisco himself did not yet believe he was under the agents' control and was not free to leave. His persistent protestations could have been viewed by the district court as an attempt by Crisco to persuade the agents not to take him into custody. Likewise the agents legitimately may have believed that Crisco did not understand that he was the person sought by the agents. The district court could properly find that at the time Crisco made the statements sought to be suppressed, a reasonable person would have believed that he was not yet in custody. This finding was not clearly erroneous.

Even if Crisco were in custody, the statement should have been suppressed only if he was "interrogated." The district court found that the statement was voluntary, and the record shows that the court could have reasonably concluded that if Crisco was in custody at the time he made the statement to the agent, he was not interrogated and therefore *Miranda* warnings were not required.

In *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), the Supreme Court provided guidance regarding when a *Miranda* warning is required:

We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

Words normally attendant to arrest and custody are excluded from the *Innis* definition of interrogation. Although the Supreme Court has not provided any direction concerning what police activities are normally attendant to arrest and custody, this circuit has suggested that when an officer informs a defendant of circumstances which contribute to an intelligent exercise of his judgment, this information may be considered normally attendant to arrest and custody. *United States v. Thierman,* 678 F.2d 1331, 1334 n. 3 (9th Cir.1982).

Crisco acted bewildered when confronted by the agents with the arrest warrant. Agent Clem testified that Crisco stated that he did not understand the charges and asked what was going on, "at that point, I said, 'Hey, you met with me—' indicating myself—'for the purpose of seeing $60,000 that I was going to use to buy a kilo of cocaine.'" Given Crisco's apparent confusion as to why the agents were attempting to arrest him, it is reasonable to conclude that Agent Clem's remarks were intended to inform Crisco of the circumstances so that Crisco would exercise his judgment as to what course of action to take.

█ It cannot be said that Agent Clem should have known that his remarks were likely to elicit an incriminating response from Crisco. The question whether an officer should have known that a remark was likely to elicit an incriminating response focuses on the perceptions of the suspect. *Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689–

90. Crisco's conduct upon being confronted with the arrest warrant does not suggest that he perceived himself to be the subject of interrogation. Rather, he demanded that the agents provide an explanation for their accusations.

There was a conflict in the testimony of the agents on the issue of whether Agent Clem's remarks to Crisco were in the form of a question. Agent Clem testified that his remark to Crisco about showing the money was not a question, but simply a response to Crisco's protestations of confusion at what was happening to him. Agent Williams recalled that Agent Clem's remarks were in the form of a question, "'You don't remember me? You don't remember me showing you $60,000 so I could buy a kilo of cocaine from you?'" The district court reasonably could have concluded that Agent Clem's testimony indicates that his intent was to explain, in the face of Crisco's vigorous protests, the basis for the agent's actions, and not to interrogate Crisco. The agent's intent in making the remarks, while not conclusive, is relevant in determining whether the remark was reasonably likely to elicit an incriminating response. *Thierman,* 678 F.2d at 1335; *Booth,* 669 F.2d at 1238.

Whether the officers knew that the suspect was peculiarly susceptible to the officers' appeal, or that he was unusually disoriented or upset is relevant to the inquiry. *Innis,* 446 U.S. at 302–03, 100 S.Ct. at 1690–91. The district court had the opportunity to evaluate the evidence in light of these considerations.

The statement sought to be suppressed was made by Crisco during a brief exchange with agents immediately after he was confronted by them. The compelling pressures of in-custody interrogation identified in *Miranda* as working "to undermine the individual's will to resist and to compel him to speak" were not present in the circumstances of this case. *See Miranda,* 384 U.S. at 494, 86 S.Ct. at 1638. The district court's finding that Crisco was not subjected to custodial interrogation was not clearly erroneous.

## MOTION FOR MISTRIAL

After receiving the note from the presiding juror regarding two jurors' contact with Claire Walker, the government witness, the district court conducted an evidentiary hearing into the nature of the contact. The court was satisfied that the danger of prejudice to Crisco was minimal, and denied his motion for mistrial.

A trial court's decision to deny a motion for mistrial is reviewed only for abuse of discretion. *United States v. Bryan*, 534 F.2d 205, 207 (9th Cir.1976). "Reviewing courts will not disturb on appeal when extraneous information relates only to issues not material to the guilt or innocence of the defendant." *United States v. Bagnariol*, 665 F.2d 877, 887 (9th Cir.1981), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

In *United States v. Bryan, supra,* a juror had a casual conversation with an important prosecution witness during the course of the trial. The juror questioned the witness about whether he had been in the navy and the juror mentioned that he had once worked as a civilian at a naval facility. On appeal, the court concluded that the conversation was relatively innocuous, and ruled that the trial court had not abused its discretion in denying defendant's motion for mistrial. *Id.* at 207.

The conversation with the government witness at issue here, like the conversation in *Bryan,* was unrelated to the issues at trial. The district court concluded, after an evidentiary hearing, that the juror-witness contact did not prejudice Crisco. Under these circumstances, the district court's denial of Crisco's motion for mistrial was not an abuse of discretion.

## SUBSTITUTION OF ALTERNATE JUROR

Federal Rule of Criminal Procedure 24(c) provides that an alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. The parties in this case entered into a written stipulation, however, that the court could substitute the alternate juror "in the event that good cause be shown to excuse one or more of the original jury members from continuing deliberations," and if this occurred, the jurors would be instructed to begin their deliberations anew. Crisco contends that the stipulation did not authorize substitution under the circumstances that ultimately developed in the case.

This circuit considered the issue of juror substitution in *Leser v. United States,* 358 F.2d 313 (9th Cir.), *petition for cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966). In *Leser,* the parties stipulated that an alternate juror could be substituted if necessary after deliberations began. The substitution did in fact occur. On appeal, the court held that in light of the stipulation entered into by counsel, the procedure was acceptable and defendants were not prejudiced by it. *Id.* at 318.

This circuit subsequently expressed concern about deviations from the language of Rule 24(c) in *United States v. Lamb,* 529 F.2d 1153 (9th Cir.1975) (*en banc*). *Lamb,* however, presented a particularly unusual factual situation suggesting impermissible coercion upon the alternate juror after the substitution occurred. *Cf. United States v. Foster,* 711 F.2d 871, 885–87 (9th Cir.1983) (finding valid Rule 24(c) waiver).

The district court in this case sought to minimize any potential prejudice from the substitution procedure.

The convictions are AFFIRMED.

CANBY, Circuit Judge, dissenting:

I respectfully dissent. While I agree fully with Judge Panner's treatment of the issues of the motion for mistrial and the substitution of the alternate juror, I part company on the *Miranda* question. In my view, the district court's finding that Crisco's statement was not the result of custodial interrogation is clearly erroneous.

There can be little question that Crisco was in custody. The agents sought him out at his work place, informed him that they had a federal warrant for his arrest, and

told him that he was under arrest. Surely at that point a reasonable person would believe he was not free to leave. *See United States v. Curtis,* 568 F.2d 643, 646 (9th Cir.1978); *United States v. Luther,* 521 F.2d 408, 410 (9th Cir.1975).

The majority, like the district court, interprets the comment of Agent Clem as an explanation of the arrest in response to Crisco's protestations that the agents had the wrong man. But the comment of Agent Clem went well beyond the kind of utterance "normally attendant to arrest and custody." *See Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Agent Clem said: "Hey, you met with me—for the purpose of seeing $60,000 that I was going to use to buy a kilo of cocaine." Judged by the standard for applying *Miranda,* these words "are reasonably likely to elicit an incriminating response from the suspect," and the agents should have known it. *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689. Agent Clem's statement[1] clearly invites an answer, either in the form of Crisco's simple "I admit that," or as a quarrel with one of the many elements contained in Agent Clem's statement. For example, Crisco might have answered, consistently with his later defense, that he saw the money but it was not "to use to buy a kilo of cocaine." Or he might similarly have denied that he met with Agent Clem "for the purpose of seeing $60,000." The examples could be multiplied, for there were many facets to Agent Clem's statement. The point is simply that the statement invites some kind of response[2] from a suspect who had been arrested but not informed of his right to remain silent. The agent's statement was not simply part of a discussion between two arresting officers, as in *Innis* and *United*

*States v. Thierman,* 678 F.2d 1331 (9th Cir. 1982), but was directed to Crisco himself and dealt with the crimes at issue. It therefore amounted to interrogation, *see United States v. Booth,* 669 F.2d 1231, 1238–39 (9th Cir.1981), and the district court clearly erred in finding otherwise.

My reading of the trial transcript convinces me that the admission of Crisco's response was not harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1976); *United States v. Wilson,* 690 F.2d 1267, 1274 (9th Cir.1982). I would therefore reverse and remand for a new trial.

---

1. Agent Williams testified that Agent Clem's statement was phrased as a question. The district court was entitled to resolve this inconsistency in favor of Agent Clem's version. It makes no difference which version is chosen, for "the term 'interrogation' refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the sus-

pect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

2. For *Miranda* purposes, an "incriminating response" is "any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Innis,* 446 U.S. at 301 n. 5, 100 S.Ct. at 1690 n. 5 (emphasis original).