IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49198-2-II |
| Respondent, | |
| v. | |
| DOUGLAS MARVIN MACKEY, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Douglas Marvin Mackey appeals his convictions for second degree assault, fourth degree assault, unlawful imprisonment, and felony harassment.  He argues that (1) the trial court erred by admitting his inculpatory statement to police at trial, (2) his fourth degree assault conviction violates his right to a unanimous jury verdict, (3) his second degree assault and fourth degree assault convictions violate the double jeopardy prohibition, and (4) the evidence is insufficient to support his conviction for unlawful imprisonment.  We disagree with Mackey's arguments and affirm his convictions.

FACTS

On March 7, 2015, Mackey picked up his girlfriend, Mallory Anderson, and their son from their home in Oregon and drove them to his residence in Vancouver.  Later that evening, Mackey and Anderson got into an argument.  Mackey struck Anderson and pinned her to the ground in the garage of his home, with his hands around her neck.  Mackey then pushed his thumbs over Anderson's eyes, breaking a blood vessel in one of her eyes.  The next day, Mackey hit Anderson several times and held her up against a wall in the hallway of his home, squeezing

his hand around her neck. Later, Mackey threatened to kill Anderson, punched her in the back multiple times, and pulled her by her hair.

Anderson asked Mackey to take her and their son home on multiple occasions. Mackey refused, stating that Anderson could not leave until her bruises were gone. Anderson did not have any means of transportation and was afraid of what might happen if she tried to leave Mackey's home. After Mackey threatened to kill Anderson, she called her father who took her and her son back to Oregon. Anderson had two black eyes and bruises on her arms and legs when she left Mackey's residence.

On May 27, 2015, police made contact with Mackey and placed him under arrest. Mackey was secured in a police officer's patrol vehicle and the officer informed Mackey that he was under arrest for an incident that occurred with Anderson in March. Mackey responded, "That was months ago!" Clerk's Papers (CP) at 104. Mackey had not been read his *Miranda*[1] warnings at this point. The State subsequently charged Mackey with one count of second degree assault for recklessly inflicting substantial bodily harm,[2] one count of second degree assault by strangulation or suffocation,[3] one count of unlawful imprisonment,[4] and one count of felony harassment.[5]

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] RCW 9A.36.021(1)(a).

[3] RCW 9A.36.021(1)(g).

[4] RCW 9A.40.040.

[5] RCW 9A.46.020(1)(a)(i), (2)(b)(ii).

Before trial, the trial court held a CrR 3.5 hearing to determine the admissibility of Mackey's inculpatory statement to police. At the hearing, Mackey argued that "our position . . . simply is that it appears there were no Miranda warnings given, but I don't know that they would have had to be under that circumstance so I don't think we're contesting that he made that particular statement." 1 Verbatim Report of Proceedings (VRP) at 89. The trial court entered findings and conclusions, determining that Mackey's statement was admissible because it was spontaneous and was not made pursuant to a custodial interrogation.

At trial, witnesses testified to the above facts. Mackey requested an instruction on fourth degree assault as a lesser included offense of the second degree assault by strangulation charge. The State withdrew its *Petrich*[6] instruction on that charge. Mackey did not object, and he did not propose a *Petrich* instruction. The trial court did not provide the jury with a *Petrich* instruction.

During closing argument, the State argued:

> The assault two, strangulation, which is your Count 2, is a little more straightforward.
> . . . .
> All you need is for the defendant to want to cut off her airway and to attempt to do so. And here we have a situation where she could not breathe, and this is—the situation that I'm talking about is the situation that occurred against the wall, downstairs, where the defendant picked her up, by her neck, with one hand, and her feet were off the ground.
> . . . .
> So again, there's a lesser included on the strangulation count, and you only get to that if you first find not guilty of strangulation.

4 VRP at 458-59. The State argued that only the "wall incident" satisfied the second degree assault by strangulation charge. *See* 4 VRP at 462.

---

[6] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984).

The jury returned verdicts finding Mackey guilty of second degree assault, the lesser included offense of fourth degree assault, unlawful imprisonment, and felony harassment. The jury verdict forms specifically stated that the jury found Mackey "guilty of the crime of Assault in the Second Degree" as charged in Count 01 and "having found [Mackey] not guilty of the crime of Assault in the Second Degree in Count 02 as charged . . . find [Mackey] guilty of the lesser included crime of Assault in the Fourth Degree." CP at 80, 86 (boldface and capitalization omitted). The jury also returned special verdicts finding that the crimes were aggravated domestic violence offenses. Mackey appeals.

ANALYSIS

I. STATEMENT TO POLICE

Mackey argues that the trial court erred by admitting his inculpatory statement to police at trial because his statement was elicited during a pre-*Miranda* custodial interrogation. The State argues that Mackey impliedly waived his right to contest his statement's admissibility. We determine that Mackey did not waive his right to contest the admissibility of his inculpatory statement but nonetheless hold that the trial court's unchallenged findings of fact support its conclusion that Mackey's pre-*Miranda* inculpatory statement was admissible at trial.

A.    *Waiver*

As an initial matter, the State argues that Mackey impliedly waived his right to contest the admissibility of his inculpatory statement to police because he withdrew his objection at the CrR 3.5 hearing. We disagree.

4

Although a CrR 3.5 hearing is mandatory, a defendant can waive it. *State v. Nogueira*, 32 Wn. App. 954, 957, 650 P.2d 1145 (1982). A CrR 3.5 hearing "may be waived if done so knowingly and intentionally," and waiver may be either express or implied. *State v. Fanger*, 34 Wn. App. 635, 637, 663 P.2d 120 (1983).

At the CrR 3.5 hearing, Mackey stated, "Your Honor, our position . . . simply is that it appears there were no Miranda warnings given, but I don't know that they would have had to be under that circumstance so I don't think we're contesting that he made that particular statement." 1 VRP at 89. The trial court ruled Mackey's statement admissible.

The State fails to show that Mackey's statements at the CrR 3.5 hearing amount to either a withdrawal of his objection to the admissibility of the evidence or a knowing and intentional waiver of the CrR 3.5 hearing. Mackey continued to argue at the CrR 3.5 hearing that his inculpatory statement was inadmissible, and the trial court entered findings of fact and conclusions of law. Accordingly, Mackey did not make a knowing or intelligent waiver of his CrR 3.5 hearing, and we consider the merits of his argument.

B. *Admissibility of Statement*

Mackey argues that the trial court erred in admitting his inculpatory statement to police because his statement was elicited during a pre-*Miranda* custodial interrogation. We disagree.

We review a trial court's ruling after a CrR 3.5 hearing to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Where, as here, findings of fact are unchallenged, they are considered

5

verities on appeal. *State v. Lorenz*, 152 Wn.2d 22, 30, 93 P.3d 133 (2004). We review the trial court's conclusions of law de novo. *Russell*, 180 Wn.2d at 867.

"*Miranda* warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). When these conditions are present but *Miranda* warnings are not given, we presume that the suspect's self-incriminating statements are involuntary and that the statements must be excluded. 152 Wn.2d at 214; *State v. Warner*, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).

*Miranda* does not apply to statements that are made outside the context of a custodial interrogation. *State v. Sadler*, 147 Wn. App. 97, 131, 193 P.3d 1108 (2008). A custodial interrogation includes express questioning and any actions or words on the part of the police that are reasonably likely to elicit an incriminating response from the suspect. *State v. Wilson*, 144 Wn. App. 166, 184, 181 P.3d 887 (2008). A suspect's voluntary, spontaneous, and unsolicited statements are not the product of a custodial interrogation. *See State v. Kolesnik*, 146 Wn. App. 790, 811, 192 P.3d 937 (2008). Moreover, there is no custodial interrogation where police advise a suspect about the nature of his charges. *United States v. Taylor*, 985 F.2d 3, 8 (1st Cir. 1993); *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995); *United States v. Crisco*, 725 F.2d 1228, 1232 (9th Cir. 1984).

Here, the trial court found that, in May 2015, a police officer arrested Mackey but did not provide him his *Miranda* warnings. The court found that Mackey was not asked any questions. After he was placed under arrest, the officer informed Mackey that his arrest pertained to an incident that occurred in March and involved Anderson. Mackey responded, "That was months ago!" CP at 104. Based on these uncontested findings, the trial court concluded that Mackey's

statement was admissible, reasoning that the statement was voluntary and spontaneous and that no custodial interrogation had occurred.

Mackey was not asked any questions, and the officer's statement was not reasonably likely to elicit an incriminating response from Mackey. Additionally, an officer's advisement of the charges a suspect faces does not, without more, constitute a custodial interrogation. *Taylor*, 985 F.2d at 8. Consequently, Mackey's statement was voluntary and spontaneous and was not solicited by the officer. Because Mackey's voluntary, spontaneous, and unsolicited statement was not the product of a custodial interrogation, *Miranda* does not apply. Therefore, the trial court's findings support its conclusion that Mackey's pre-*Miranda* inculpatory statement was admissible at trial.

## II. *PETRICH* INSTRUCTION

Mackey argues for the first time on appeal that the fourth degree assault conviction violates his right to a unanimous jury verdict because there were multiple acts that could have supported the conviction, but the jury was not given a *Petrich* instruction and the State did not elect which act supported the fourth degree assault charge. The State argues that Mackey waived this argument on appeal. We agree with the State.

Generally, we will not consider an issue raised for the first time on appeal. RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). However, a defendant may raise an objection not properly preserved at trial if it is a manifest constitutional error. RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 98. After determining that the error is of constitutional magnitude, we then determine whether the error was manifest. *O'Hara*, 167 Wn.2d at 99.

An error is manifest when there is actual prejudice. *O'Hara*, 167 Wn.2d at 99. In ascertaining whether there was actual prejudice, we focus on whether "the alleged error actually affected [Mackey's] rights at trial." *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

A criminal defendant has a constitutional right to a unanimous jury verdict. WASH. CONST. art. I, § 21; *State v. Rodriguez*, 187 Wn. App. 922, 936, 352 P.3d 200 (2015). When the State presents evidence of multiple acts that could form the basis of one count charged, either the State must elect which act it will rely upon for a conviction or the court must give the jury a *Petrich* instruction, instructing the jury to agree on a specific criminal act to support the conviction. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). If there is neither an election nor a *Petrich* instruction, omission of the *Petrich* instruction violates the defendant's constitutional right to a unanimous jury verdict and is presumed to result in prejudice. *See* 166 Wn.2d at 893.

During trial, the State presented evidence of three distinct assaultive incidents: one where Mackey pinned Anderson to the ground and pressed his thumbs into her eyes, one where Mackey held Anderson up against a wall by her neck, and another where Mackey threatened to kill Anderson, punched her in the back multiple times, and pulled her by her hair. During closing argument, the State provided:

> The assault two, strangulation, which is your Count 2, is a little more straightforward.
> . . . .
> All you need is for the defendant to want to cut off her airway and to attempt to do so. And here we have a situation where she could not breathe, and this is—the situation that I'm talking about is the situation that occurred against the wall, downstairs, where the defendant picked her up, by her neck, with one hand, and her feet were off the ground.

8

> . . . .
>
> So again, there's a lesser included on the strangulation count, and you only get to that if you first find not guilty of strangulation.

4 VRP at 458-59. The State argued that only the "wall incident" could satisfy the second degree assault by strangulation charge. *See* 4 VRP at 462. The trial court did not provide the jury with a *Petrich* instruction.

The jury returned its verdict, finding Mackey "guilty of the crime of Assault in the Second Degree" as charged in Count 01. CP at 80 (boldface and capitalization omitted). The jury also returned a verdict that stated: "having found [Mackey] not guilty of the crime of Assault in the Second Degree in Count 02 as charged . . . find [Mackey] . . . guilty of the lesser included crime of Assault in the Fourth Degree." CP at 86.

Although the State discussed the three assaultive incidents during closing argument, its argument clearly and explicitly elected the act it was relying on for a conviction on the second degree assault by strangulation charge.[7] The State noted that the second degree assault by strangulation charge, as well as the lesser included fourth degree assault, was based only on the incident where Mackey held Anderson up against a wall by her neck. Accordingly, the State elected the act on which the jury had to rely in reaching a conviction for either the second degree assault or the lesser included charge. Because the State elected the act it relied on for the second degree assault by strangulation charge, no *Petrich* instruction was required. Moreover, the jury verdicts make clear that the jury reached a unanimous guilty verdict on the lesser included

---

[7] "[A]n election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution 'clearly identifie[s] the act upon which' the charge in question is based." *State v. Carson*, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015) (alteration in original) (quoting *State v. Thompson*, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012)).

offense based on the act elected for the second degree assault by strangulation charge. Thus, Mackey fails to raise a manifest constitutional error, and his argument is waived on appeal.

### III. DOUBLE JEOPARDY

Mackey also argues that his second degree assault and fourth degree assault convictions violate the prohibition against double jeopardy because the convictions may constitute the same offense. We disagree.

We review double jeopardy claims de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). Double jeopardy prevents a person from being "twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. While a defendant may face multiple charges arising from the same conduct, the double jeopardy prohibition forbids a trial court from entering multiple convictions for the same offense. *Freeman*, 153 Wn.2d at 770. To determine whether a defendant's multiple convictions for different degrees of assault are for the same offense, we apply the unit of prosecution test. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 982, 329 P.3d 78 (2014).

In applying the unit of prosecution test, we determine whether multiple assaultive acts constitute one or more than one course of conduct. 180 Wn.2d at 985. In making this determination, we consider: (1) the length of time over which the assaultive acts took place; (2) whether the assaultive acts took place in the same location; (3) the defendant's intent or motivation for the different assaultive acts; (4) whether the acts were uninterrupted, or if there were any intervening acts or events; and (5) whether there was an opportunity for the defendant to reconsider his actions. 180 Wn.2d at 985. No one factor is dispositive, and the ultimate

determination of whether multiple assaultive acts constitute one course of conduct depends on the totality of the circumstances. 180 Wn.2d at 985.

Mackey's second degree assault conviction arose from pinning Anderson to the ground in the garage, hitting her and placing his hands around her neck. On this occasion, Mackey also put his thumbs over Anderson's eyes and broke a blood vessel in one of her eyes. On a different day, Mackey hit Anderson several times and held her up against a wall in the hallway by her neck, which gave rise to his fourth degree assault conviction. After each assault, Mackey apologized to Anderson.

Considering the totality of the circumstances, the two assaults do not constitute the same course of conduct. The assaults occurred in different locations over the course of two days. There were intervening daily events between the two assaults and Mackey apologized after each occasion, which shows that Mackey had the opportunity to reconsider his actions. All of these facts demonstrate that the acts giving rise to Mackey's second degree assault and fourth degree assault convictions constitute more than one course of conduct. Accordingly, the trial court did not enter multiple convictions against Mackey for the same offense, and Mackey's convictions do not violate the prohibition against double jeopardy.

IV. SUFFICIENCY OF THE EVIDENCE

Mackey also argues that insufficient evidence supports his conviction for unlawful imprisonment because the State failed to prove beyond a reasonable doubt that Anderson was restrained. We disagree.

A challenge to the sufficiency of the evidence to convict is a constitutional question that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). To determine whether sufficient evidence supports a defendant's conviction, we must, after viewing the evidence in a light most favorable to the State, consider whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. 184 Wn.2d at 903. We must draw all reasonable inferences from the evidence in favor of the State and interpret them strongly against the defendant. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). We consider circumstantial evidence and direct evidence as equally reliable. *State v. Bowen*, 157 Wn. App. 821, 827, 239 P.3d 1114 (2010).

"A person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040(1). "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which substantially interferes with his or her liberty. RCW 9A.40.010(6). Restraint is without consent when it is accomplished by physical force, intimidation, or deception. RCW 9A.40.010(6)(a). Restraint is substantial when there is a "real" or "material" interference with another's liberty, rather than a slight inconvenience. *State v. Washington*, 135 Wn. App. 42, 50, 143 P.3d 606 (2006). The presence of an avenue of escape "may help to defeat a prosecution for unlawful imprisonment unless 'the known means of escape . . . present[s] a danger or more than a mere inconvenience.'" 135 Wn. App. at 50 (quoting *State v. Kinchen*, 92 Wn. App. 442, 452 n.16, 963 P.2d 928 (1998)).

Mackey picked up Anderson and their son from their home in Oregon and drove them to his residence in Vancouver. Anderson did not have any means of transportation. Over the course of three days, Mackey assaulted Anderson on a number of occasions. Anderson asked Mackey to take her and her son home multiple times, but Mackey refused and said that she could not "leave until the bruises are gone." 2 VRP at 161. Mackey threatened to kill Anderson, and Anderson was afraid of what might happen if she called the police.

Viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could find the essential elements of unlawful restraint beyond a reasonable doubt. Mackey knowingly restricted Anderson's movements by way of intimidation by assaulting her on multiple occasions, refusing to let her leave his residence, and threatening to kill her. These actions restricted Anderson's movements in a manner that substantially interfered with her liberty. That Anderson could have escaped Mackey's residence does not defeat his unlawful imprisonment conviction. Anderson's means of escape for herself and her son were not reasonable and presented more than a mere inconvenience. Moreover, Anderson did not believe that she would be able to leave Mackey's residence and was afraid of what might happen if she attempted to call for help. Thus, the State presented sufficient evidence to support Mackey's conviction for unlawful imprisonment.

## V. APPELLATE COSTS

Mackey argues that we should decline to impose appellate costs because he is indigent. The State represents that it will not seek appellate costs in this case. We accept the State's representation and waive appellate costs.

No. 49198-2-II

We affirm Mackey's convictions.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_Worswick, J._
Worswick, J.

We concur:

_Bjorgen, C.J._
Bjorgen, C.J.

_Melnick, J._
Melnick, J.

14